UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREGORY A. STEVENSON, as a shareholder of CREDIT SUISSE GROUP AG on behalf of CREDIT SUISSE GROUP AG shareholders,<br><br>                                             Plaintiff,<br><br>vs.<br><br>RICHARD E. THORNBURGH, BRADLEY W. DOUGAN, JOHN G. POPP, BRIAN CHIN, JAY KIM, ALBERT SOHN, MIRKO BIANCHI, URS ROHNER, JOHN TINER, SEVERIN SCHWAN, IRIS BOHNET, LYDIE HUDSON, KAIKHUSHRU S. NARGOLWALA, SERAINA MACIA, JOAQUIN J. RIBEIRO, MICHAEL KLEIN, NOREEN DOYLE, JAMES L. AMINE, ERIC VARVEL, ROMEO CERUTTI, DAVID L. MILLER, DAVID R. MATHERS, LARA J. WARNER, TIMOTHY P. O'HARA, ROBERT S. SHAFIR, PAMELA A. THOMAS-GRAHAM, SEAN T. BRADY, ROBERT JAIN, PHILIP VASAN, CREDIT SUISSE HOLDINGS (USA) INC., CREDIT SUISSE SECURITIES (USA) LLC, CREDIT SUISSE CAPITAL LLC, CREDIT SUISSE MANAGEMENT LLC, KPMG LLP, PAUL KNOPP, WILLIAM THOMAS, LARRY BRADLEY, LAURA M. NEWINSKI, JOHN B. VEIHMEYER, BRIAN J. SWEET, SCOTT MARCELLO, DAVID MIDDENDORF, THOMAS WHITTLE, CYNTHIA HOLDER, and JEFFREY WADA,<br><br>                                             Defendants. | Case No. 23 Civ. 4458 (CM) (SLC)<br><br>[Rel. 23 Civ. 4813 (CM) (SLC); 23 Civ. 5874 (CM); 23 Civ. 6023 (CM); 23 Civ. 7297 (CM); 23 Civ. 6039 (CM)] |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS KPMG LLP, PAUL KNOPP, AND LAURA M. NEWINSKI'S MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

                                                    **Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ............................................................................................................................2

ARGUMENT ..................................................................................................................................4

I.      KPMG US WAS NEVER CREDIT SUISSE'S STATUTORY AUDITOR .......................4

II.     PLAINTIFF'S RICO AND RICO CONSPIRACY CLAIMS FAIL ..................................7

         A.      Plaintiff Fails To Plead Any RICO Predicate Acts By KPMG US .........................7

         B.      Plaintiff Fails To Allege How The Alleged PCAOB Inspection Matter Ties To Any Other Racketeering Activity ................................................................8

         C.      Plaintiff Fails To Allege That Any Alleged Predicate Act By KPMG US Proximately Caused Plaintiff's Purported Injury.......................................................9

         D.      Plaintiff Fails To Allege Any Continuing Criminal Activity ..................................9

                1.      *Closed-Ended Continuity* ...............................................................................9

                2.      *Open-Ended Continuity* ...............................................................................10

         E.      Plaintiff's RICO Conspiracy Claim Fails ................................................................11

III.    PLAINTIFF's SWISS-LAW CLAIMS FAIL ....................................................................11

IV.    THE AC ALLEGES NO FACTS ABOUT THE KPMG US INDIVIDUALS .................13

CONCLUSION ..............................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
    529 F. Supp. 3d 111 (S.D.N.Y. 2021)...............................................................................5, 6

*Aronov v. Mersini*,
    2015 WL 1780164 (S.D.N.Y. Apr. 20, 2015)......................................................................11

*In re Asia Pulp & Paper Sec. Litig.*,
    293 F. Supp. 2d 391 (S.D.N.Y. Nov. 25, 2003)..................................................................6, 7

*Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*,
    2023 WL 2751049 (S.D.N.Y. Mar. 31, 2023) .........................................................................8

*Carter v. Scripps Networks, LLC*,
    2023 WL 3061858 (S.D.N.Y. Apr. 24, 2023)..........................................................................3

*Catania v. NYU Langone Health Sys.*,
    2022 WL 17539121 (S.D.N.Y. Dec. 5, 2022) .........................................................................4

*In re Certain Funds, Accounts, and/or Inv. Vehicles Managed by Affiliates of
    Fortress Inv. Grp. LLC*,
    2014 WL 3404955 (S.D.N.Y. July 9, 2014), *aff'd* 798 F.3d 113 (2d Cir. 2015).......................5

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)....................................................................................................3

*DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*,
    770 F. Supp. 2d 627 (S.D.N.Y. 2011).....................................................................................9

*Doe v. Trump Corp.*,
    385 F. Supp. 3d 265 (S.D.N.Y. 2019).....................................................................................9

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004)..................................................................................................11

*GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*,
    67 F.3d 463 (2d Cir. 1995)....................................................................................................10

*Hobbs v. Dept. of Transp. NYC*,
    2020 WL 1140794 (S.D.N.Y. Mar. 6, 2020) (McMahon, J.) ................................................13

*Int'l Bhd. of Teamsters Loc. 456 Health & Welfare Tr. Fund v. Quest Diagnostics
    Inc.*,
    2012 WL 13202126 (E.D.N.Y. Apr. 19, 2012) .....................................................................11

*In re Lernout & Hauspie Sec. Litig.*,
   230 F. Supp. 2d 152 (D. Mass. 2002) ..................................................................................5

*Lipsky v. Commonwealth United Corp.*,
   551 F.2d 887 (2d Cir. 1976)............................................................................................7, 11

*McGuirk v. Swiss Re Fin. Servs., Corp.*,
   2016 WL 10683305 (S.D.N.Y. June 17, 2016) (McMahon, J.), *aff'd*, 699 F.
   App'x 55 (2d Cir. 2017).......................................................................................................8

*MinedMap, Inc. v. Northway Mining, LLC*,
   2022 WL 570082 (2d Cir. Feb. 25, 2022)..........................................................................10

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016)................................................................................................3

*Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*,
   2004 WL 112948 (S.D.N.Y. Jan. 22, 2004) .....................................................................5, 7

*One World, LLC v. Onoufriadis*,
   2021 WL 184400 (S.D.N.Y. Jan. 19, 2021), *aff'd*, 2021 WL 4452070 (2d Cir.
   Sept. 29, 2021) (McMahon, J.) .........................................................................................11

*Otto Candies, LLC v. KPMG, LLP*,
   2020 WL 4917596 (Del. Ch. Aug. 21, 2020), *order entered*, 2020 WL
   5517439 (Del. Ch. Sept. 10, 2020), *aff'd*, 251 A.3d 1016 (Del. 2021) .....................................6

*Rio Tinto PLC v. Vale*,
   2015 WL 7769534 (S.D.N.Y. Nov. 20, 2015)...................................................................10

*Ritani, LLC v. Aghjayan*,
   880 F. Supp. 2d 425 (S.D.N.Y. 2012)...............................................................................13

*Schnall v. Annuity & Life RE (Holdings), Ltd.*,
   2006 WL 2331138 (D. Conn. Aug. 10, 2006) .....................................................................6

*Spool v. World Child Int'l Adoption Agency*,
   520 F.3d 178 (2d Cir. 2008)...........................................................................................9, 10

*Star Energy Corp. v. RSM Top-Audit*,
   2008 WL 5110919 (S.D.N.Y. Nov. 26, 2008).....................................................................6

*Stein v. N.Y. Stair Cushion Co.*,
   2006 WL 319300 (E.D.N.Y. Feb. 10, 2006)......................................................................10

*Stevenson v. Thornburg*,
   Case No. 23 Civ. 4458 (S.D.N.Y.).......................................................................................1

*United States v. Blaszczak*,
    56 F.4th 230 (2d Cir. 2022) ..............................................................................................7

*United States v. Middendorf*,
    No. 19-2983 (2d Cir. July 31, 2023), ECF No. 242................................................................7

*Williams v. Affinion Grp., LLC*,
    889 F.3d 116 (2d Cir. 2018)..............................................................................................11

*Zuhovitzky v. UBS AG CHE 101.329.562*,
    2023 WL 4584452 (S.D.N.Y. July 18, 2023) ........................................................................8, 9

Defendants KPMG LLP ("KPMG US"), Paul Knopp, and Laura M. Newinski (together, the "KPMG US Defendants") join in the Credit Suisse Defendants' Motion to Dismiss (the "CS Brief"), and respectfully submit this further memorandum of law in support of their Motion to Dismiss the Amended Class Action Complaint, ECF No. 60[1] ("AC," cited herein as "¶").

## PRELIMINARY STATEMENT

In this lawsuit, Plaintiff alleges that "KPMG" somehow "cooperated" with officers and directors of Credit Suisse Group AG ("CS AG") to "facilitate" alleged mismanagement at the bank that allegedly caused losses to CS AG and its shareholders years later. ¶¶ 1, 3–7, 11. But the AC is devoid of a single well-pled fact plausibly suggesting that anyone affiliated with any KPMG entity did anything to cause Plaintiff's purported harm. And even the generic premise of Plaintiff's claims is demonstrably wrong: KPMG *US*—the entity named as a Defendant here—is not, and never was, CS AG's auditor. Plaintiff's claims as to the KPMG US Defendants should be dismissed for the following reasons:

***First***, a central flaw running through all of Plaintiff's claims is that CS AG publicly disclosed it was audited, until 2020, by KPMG *AG* ("KPMG Switzerland")—not KPMG US. The AC alleges no facts supporting the conclusory assertion that unnamed "[t]op KPMG partners/officials located in New York were involved" in unspecified ways "in the worldwide Credit Suisse audits, the Credit Suisse New York operations and the management of Credit Suisse." ¶ 177. In conflating these and other entities, Plaintiff asks the Court to ignore decades of law in this District recognizing that members of an international network of accounting firms are separate and legally distinct entities whose work must be judged independently. See Section I.

***Second***, Plaintiffs do not allege any acts by "KPMG" that could possibly support the claims

---

[1] ECF cites are to the docket in *Stevenson v. Thornburg*, Case No. 23 Civ. 4458 (S.D.N.Y.).

1

asserted. As to his RICO claims (Counts II and III), Plaintiff cites only a single isolated incident (the so-called "steal-the-list" incident) involving a small number of former KPMG US professionals who purportedly misused PCAOB inspection information to enhance audit files for certain clients six years (or more) before Plaintiff incurred purported losses. But nothing in the AC ties the alleged actions of those few individuals to an organized RICO enterprise engaged in a "pattern" of racketeering activity. Moreover, Plaintiff offers no facts to support the bald assertion that this US regulatory matter impacted KPMG Switzerland's audits or somehow caused harm to Plaintiff—particularly given that this activity ended in 2017 and KPMG Switzerland rotated out as CS AG's auditor in 2020. And far from establishing "continuity," the absence of any alleged act attributable to the KPMG US Defendants since the inspection matter suggests any actual enterprise ended long ago. *See* Section II.

***Third***, although Swiss law creates a limited right of action against statutory auditors of Swiss companies, there is no basis under Swiss law to impose liability on a US entity that—like KPMG US—never served in that capacity. Plaintiff's claim under the Swiss Code of Obligations (Count I) therefore fails. *See* Section III.

***Fourth***, as bare as the claims are against KPMG US, Plaintiff's claims against Mr. Knopp and Ms. Newinski are even thinner. The AC does not allege a single fact specific to either KPMG US officer. *See* Section IV.

## BACKGROUND

Defendant KPMG US is a Delaware limited liability partnership that provides audit, tax, and advisory services across the US, including in New York. *See* ¶ 1(c). KPMG US is not, and has never been, the "statutory auditor" of CS AG. *See* ¶¶ 7, 411.

Public documents referenced in the AC make clear on their face that KPMG AG—an

independent accounting firm based in Zurich, Switzerland—was CS AG's auditor. *See* Ex. 1, CS AG 2017 Annual Report, at 217 ("Our statutory auditor is KPMG AG (KPMG), Badenerstrasse 172, 8004 Zurich, Switzerland."); Ex. 2, CS AG 2018 Annual Report, at 227 (same); Ex. 3, CS AG 2019 Annual Report, at 259–60 (same);[2] *see also* ¶¶ 7, 411 (discussing CS AG annual reports). These same documents also explain that "KPMG AG is . . . a member of the KPMG network of independent firms affiliated with KPMG International Cooperative." Ex. 3, at 260. This is consistent with KPMG's public disclosures explaining that "KPMG is the brand under which the member firms of KPMG International Limited operate and provide professional services. . . . Each firm is a separate legal entity and . . . [member firms] are not a global partnership, single firm, multinational corporation, joint venture, or in a principal or agent relationship . . . with each other." Ex. 4, Governance, KPMG Int'l Ltd., at 1; *see also* ¶ 119 (discussing other information from KPMG International Ltd. and KPMG US websites).

It was thus KPMG Switzerland—***not*** KPMG US—that signed the "Report of the Statutory Auditor" accompanying CS AG's annual reports and allegedly "certif[ied]" CS AG's "controls and risk management processes as adequate and effective" during its tenure. *See* Ex. 2, at 267–68; Ex. 3, at 259–60; ¶ 411.[3]

---

[2] Exhibits ("Ex.") are attached to the Declaration of Stephen Barry filed herewith. The Court "may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference[,] . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted); *accord Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016). For purposes of this Motion, the Court may also "take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute." *Carter v. Scripps Networks, LLC*, 2023 WL 3061858, at *5 n.4 (S.D.N.Y. Apr. 24, 2023) (quotations omitted).

[3] Under EU rules mandating "auditor rotation," CS AG announced in 2017 that the Swiss member firm of PricewaterhouseCoopers ("PwC") would replace KPMG Switzerland as its auditor—a transition completed in 2020. *See* Ex. 1, at 198; Ex. 5, CS AG Annual Report 2020, at 185 (noting

3

Aside from misidentifying KPMG US as CS AG's statutory auditor, the AC pleads nothing about any services that KPMG US purportedly provided to CS AG. The AC does, however, reference several other independent KPMG member firms that (like KPMG US) did not serve as CS AG's auditor and (like KPMG Switzerland) are not a part of this lawsuit—branding them all simply "KPMG." ¶¶ 413, 424 (describing, e.g., allegations involving KPMG Germany, KPMG UK, KPMG Colombia, KPMG India, and KPMG South Africa).[4]

## ARGUMENT

**I.     KPMG US WAS NEVER CREDIT SUISSE'S STATUTORY AUDITOR**

Plaintiff's claims against KPMG US fail for the threshold reason that they wrongly conflate two separate and independent KPMG member firms: KPMG US is not and never has been CS AG's auditor. Plaintiff seeks to hold "KPMG" responsible for the alleged "collapse" of CS AG in March 2023 based on an allegation that "KPMG was [CS AG]'s statutory auditor and accountant for some 20 years, up until 2020." ¶ 6. The Court need not accept Plaintiff's allegations when they are directly contradicted by sources incorporated in his complaint. *Catania v. NYU Langone Health Sys.*, 2022 WL 17539121, at *1 (S.D.N.Y. Dec. 5, 2022); *see* ¶¶ 7, 411; Ex. 1, at 217; Ex. 2, at 227; Ex. 3, at 259–60; Ex. 5, at 185.

This distinction is dispositive. As a long line of decisions in this District have acknowledged, "[m]ember firms in an international accounting association are not part of a single

---

"the successful completion of [CS AG's] external auditor rotation from KPMG [Switzerland] to PwC, effective for the fiscal year ending December 31, 2020").

[4] *See, e.g.*, ¶¶ 413 (KPMG Colombia, UK, and India, https://pcaobus.org/news-events/news-releases/news-release-detail/imposing-7-7-million-in-fines-pcaob-sanctions-three-firms-four-individuals-kpmg-global-network), 424.11 (KPMG UK, https://www.the guardian.com/business/2021/sep/01/uk-regulator-issues-complaint-to-kpmg-over-carillion-and-regenersis-audits), 424.12 (KPMG Germany, https://www.wsj.com/articles/SB117219374546016790), 424.13 (KPMG South Africa, https://www.reuters.com/article/safrica-kpmg/s-africas-kpmg-reports-ex-partner-to-police-over-bank-scandal-sources-idINL8N1XY4HQ).

4

firm and are neither agents nor partners of other member firms simply by virtue of using the same brand name." *Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*, 2004 WL 112948, at *3 (S.D.N.Y. Jan. 22, 2004). Likewise, one accounting firm cannot be held liable for the alleged acts of another "simply because they shared an associational name and/or collaborated on certain aspects of a transaction." *Id.* (collecting cases).[5] Therefore, absent well-pled allegations that KPMG US itself participated directly in the audit work and other events described in the AC, Plaintiff would need to plead specific facts to hold KPMG US vicariously liable for purported conduct by KPMG Switzerland—i.e., facts demonstrating a principal-agent or alter-ego relationship or a partnership. *See id*. at *3–4 (dismissing claims absent "clearly and specifically articulate allegations of fact which can support the existence of" vicarious liability for acts of other member firms). The AC does neither.

***First***, Plaintiff offers no basis to hold KPMG US ***directly*** responsible for his alleged harm. The AC refers only generically to the "KPMG" brand, while Plaintiff's actual allegations—scant as they are—relate entirely to the "statutory auditor" role held by KPMG Switzerland. *See*, *e.g.*, ¶¶ 1(c), 6, 411. For example, Plaintiff alleges that in "KPMG's" role as Credit Suisse's "statutory auditor and accountant," it "certif[ied] the controls and risk management processes as adequate and effective in 15 plus years of Annual Reports to shareholders," and thereby "participated in, obtained revenue from, and profited from the 'Credit Suisse Enterprise.'" ¶ 411. Plaintiff cannot

---

[5] *See also, e.g.*, *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 147 (S.D.N.Y. 2021); *In re Certain Funds, Accounts, and/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, 2014 WL 3404955, at *5 (S.D.N.Y. July 9, 2014), *aff'd* 798 F.3d 113 (2d Cir. 2015) (no basis for discovery from KPMG US where "audits and investigations [were] conducted by" other KPMG "member firms" and such "entities are distinct in a legal sense from KPMG [US]"); *In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, 170 (D. Mass. 2002) (rejecting "single entity" theory of liability as to KPMG, noting the firm's website "states at the bottom that each of KPMG's member firms is a 'separate and independent legal entity'").

5

invoke generalized labeling to attribute his alleged harms to KPMG US when his complaint makes clear that his allegations relate entirely to CS AG's "statutory auditor."

***Second***, Plaintiff also fails to plead facts that would justify treating KPMG US as an agent, alter ego, or partner of KPMG Switzerland. To make such a showing, Plaintiff must allege that KPMG US was "able to control or . . . influence the particular audits conducted or opinions offered by [other] individual member firms." *Star Energy Corp. v. RSM Top-Audit*, 2008 WL 5110919, at *4 (S.D.N.Y. Nov. 26, 2008) (quotations omitted); *see, e.g.*, *Schnall v. Annuity & Life RE (Holdings), Ltd.*, 2006 WL 2331138, at *5–6 (D. Conn. Aug. 10, 2006) (dismissing claims against KPMG US based on alleged misconduct by KPMG Bermuda given absence of facts showing control or influence by US firm); *In re Asia Pulp & Paper Sec. Litig.*, 293 F. Supp. 2d 391, 396 (S.D.N.Y. Nov. 25, 2003) (dismissing complaint "bereft of any allegations that [defendant], pursuant to an agreement or otherwise, was able to control or in any way influence the particular audits conducted or opinions offered by its individual member firms").

At most, the AC asserts that KPMG US—or what Plaintiff calls the "New York KPMG operation"—should be liable for the alleged actions of KPMG Switzerland because unidentified "[t]op KPMG partners/officials located in New York were *involved in* the worldwide Credit Suisse audits, the Credit Suisse New York operations and the management of Credit Suisse." ¶ 177 (emphasis added); *see also* ¶ 7. But mere "generalized allegations" that a US accounting firm "provided input [and] technical expertise" or "consulted and gave directions" to an international member firm are insufficient. *In re Aegean Marine*, 529 F. Supp. 3d at 159 (quotations omitted); *see also Otto Candies, LLC v. KPMG, LLP*, 2020 WL 4917596, at *17 (Del. Ch. Aug. 21, 2020), *order entered*, 2020 WL 5517439 (Del. Ch. Sept. 10, 2020), *aff'd*, 251 A.3d 1016 (Del. 2021) (rejecting general allegations that KPMG US was responsible for audit performed by KPMG

6

Mexico merely because KPMG US audited Citigroup, which had a banking relationship with subsidiary of KPMG Mexico's client). The AC fails to name a single KPMG US "partner" or "official" who was "involved in" any CS AG audit, ¶ 137, much less facts suggesting *anyone* affiliated with KPMG US did *anything* to support any audit of CS AG. So in the end, Plaintiff is left with nothing more than the brand name shared between KPMG Switzerland and KPMG US. Second Circuit law forecloses Plaintiff's theory of liability on that basis. *See Nuevo Mundo*, 2004 WL 112948, at *3; *In re Asia Pulp & Paper*, 293 F. Supp. 2d at 396 (collecting cases).

## II. PLAINTIFF'S RICO AND RICO CONSPIRACY CLAIMS FAIL

Plaintiff fails to state a RICO claim against the KPMG US Defendants on multiple grounds as stated in the CS Brief and below.

### A. Plaintiff Fails To Plead Any RICO Predicate Acts By KPMG US

Plaintiff's only attempt to plead a predicate act concerning "KPMG" stems from the 2018 and 2019 prosecution of six former KPMG US professionals for allegedly misappropriating PCAOB inspection plans between 2015 and 2017 and using that information to enhance certain "audit workpapers." ¶¶ 415–23. But as the AC concedes, none of the KPMG US Defendants (or KPMG Switzerland, for that matter) were parties to any criminal proceedings resulting from that alleged incident. ¶ 5. And, as a matter of law, KPMG US's separate civil settlement with the SEC is not a RICO predicate act. *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893–94 (2d Cir. 1976) (finding civil settlements did not support RICO claim). Moreover, recent developments make clear that the isolated conduct of these former KPMG US professionals was not criminal: the Department of Justice recently moved to dismiss indictments filed against several of the individuals involved. *See* Mot. for Remand, at 4–7, *United States v. Middendorf*, No. 19-2983 (2d Cir. July 31, 2023), ECF No. 242 (finding alleged misuse of regulatory information did not constitute wire fraud in light of *United States v. Blaszczak*, 56 F.4th 230 (2d Cir. 2022)).

7

Plaintiff therefore has not pled criminal conduct that could even *potentially* constitute a predicate act, much less one attributable to KPMG US.

### B. Plaintiff Fails To Allege How The Alleged PCAOB Inspection Matter Ties To Any Other Racketeering Activity

Plaintiff's reliance on the alleged inspection matter to show a "pattern of racketeering activity" is similarly misplaced. To plead a pattern of racketeering activity, a plaintiff must allege a series of predicate acts "'that both are related to one another and have a nexus to the enterprise.'" *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 2023 WL 2751049, at *18 (S.D.N.Y. Mar. 31, 2023) (quoting *United States v. Delgado*, 972 F.3d 63, 79 (2d Cir. 2020)).

The AC comes nowhere close. Despite 267 pages of scattershot allegations, none of the facts alleged plausibly connects the unsanctioned acts of a few former KPMG professionals to any other predicate act alleged, much less explains how such an isolated incident furthered any purported RICO enterprise. Plaintiff speculates that, because Credit Suisse was allegedly among the entities included on the PCAOB list at issue, various CS AG "scandals" might otherwise have emerged sooner or been prevented. ¶¶ 5, 415. But Plaintiff never even tries to specify *how* anyone used information about an upcoming regulatory review to somehow cause or conceal alleged bad behavior at CS AG. In the absence of well-pled factual support, such a logical leap need not be accepted. *See Zuhovitzky v. UBS AG CHE 101.329.562*, 2023 WL 4584452, at *13 (S.D.N.Y. July 18, 2023) (dismissing RICO claim where plaintiffs failed to connect deferred prosecution agreement to conduct alleged in the complaint); *McGuirk v. Swiss Re Fin. Servs., Corp.*, 2016 WL 10683305, at *6 (S.D.N.Y. June 17, 2016) (McMahon, J.), *aff'd*, 699 F. App'x 55 (2d Cir. 2017) (confirming that "unwarranted deductions of fact" need not be accepted as "true" at pleading stage) (quotations omitted).

8

### C. Plaintiff Fails To Allege That Any Alleged Predicate Act By KPMG US Proximately Caused Plaintiff's Purported Injury

Plaintiff's RICO claims fail for the independent reason that the AC does not plead facts demonstrating a "direct and straightforward" connection between any KPMG US predicate act and Plaintiff's purported injury. *Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 278 (S.D.N.Y. 2019) (quotation omitted). There is nothing alleged that plausibly connects the actions of a few former KPMG professionals in 2017 (and earlier) to CS AG's reported financial losses and stock drop in 2023. As noted, the only thing linking the regulatory inspection matter to CS AG *at all* is an allegation that Credit Suisse appeared on the PCAOB list. But Plaintiff does not explain how this occurrence caused a CS AG stock drop six years later. *See DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 651 (S.D.N.Y. 2011) ("[T]he alleged conduct must be 'directly responsible' for the harm alleged rather than simply allowing that harm to come about more easily." (quotation omitted)); *see also Zuhovitzky*, 2023 WL 4584452, at *9 (dismissing RICO claims where "multiple steps in the causal chain separat[ed] the challenged conduct from the asserted injury" and plaintiff's theory of liability "rest[ed] on the independent actions of third and even fourth parties" (quotation omitted)).

### D. Plaintiff Fails To Allege Any Continuing Criminal Activity

A party can satisfy the continuity requirement of its RICO claim "either by showing a 'closed-ended' pattern—a series of related predicate acts extending over a substantial period of time—or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (quoting *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989)). Plaintiff does neither.

#### 1. *Closed-Ended Continuity*

The AC fails to allege closed-ended continuity. Doing so requires predicate acts extending

9

over "a substantial period of time." *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995) (quotation omitted). In assessing closed-ended continuity, "courts must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO." *Stein v. N.Y. Stair Cushion Co.*, 2006 WL 319300, at *7 (E.D.N.Y. Feb. 10, 2006) (quotation omitted). That is precisely what Plaintiff attempts here: he relies upon a single isolated incident involving a small number of individuals who were subsequently prosecuted for their behavior (before DOJ moved to drop the charges). ECF No. 36, at 10, 29–30; ¶¶ 415–23. But as a matter of law, such a one-off matter cannot establish close-ended continuity. *See MinedMap, Inc. v. Northway Mining, LLC*, 2022 WL 570082, at *2 (2d Cir. Feb. 25, 2022) (no closed-ended continuity where complaint alleges, at most, one scheme); *Rio Tinto PLC v. Vale*, 2015 WL 7769534, at *11 (S.D.N.Y. Nov. 20, 2015) (dismissing RICO claim where plaintiff alleged only that "a 'handful' of participants engaged in a single scheme").

          2.    *Open-Ended Continuity*

To establish open-ended continuity as to an enterprise that "primarily conducts a legitimate business," a plaintiff must plead facts plausibly suggesting that the predicate acts alleged represent "the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Spool*, 520 F.3d at 185.

As to the first prong, there is nothing alleged to support the (outlandish) assertion that a years-old incident involving former KPMG professionals represents KPMG US's modus operandi. As a leading "Big Four" public accounting firm, KPMG US employs more than 40,000 personnel in the US. ¶ 119. As a matter of math and common sense, the alleged acts of just six individuals (more than six years ago) necessarily reflects the extreme exception—not the norm. And those individuals were terminated, resigned, or placed on leave upon discovery of their conduct. *See*

Ex. 6, SEC Press Release.[6]

As to the second prong, Plaintiff acknowledges that CS AG replaced KPMG Switzerland as its auditor three years ago, ¶ 5, confirming any purported scheme involving "KPMG" has ceased. *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004) (finding no threat of continued activity where last alleged predicate act occurred approximately two years before amended complaint filing). In fact, because EU rules required CS AG to replace its statutory auditor, any enterprise was "inherently terminable." *One World, LLC v. Onoufriadis*, 2021 WL 184400, at *10 (S.D.N.Y. Jan. 19, 2021), *aff'd*, 2021 WL 4452070 (2d Cir. Sept. 29, 2021) (McMahon, J.) (dismissing RICO claims where alleged scheme was "inherently terminable"); *Aronov v. Mersini*, 2015 WL 1780164, at *7 (S.D.N.Y. Apr. 20, 2015) ("The Second Circuit has repeatedly held that 'an inherently terminable scheme does not imply a threat of continued racketeering activity.'") (collecting cases).

### E. Plaintiff's RICO Conspiracy Claim Fails

Because Plaintiff fails to state a primary RICO claim, his RICO conspiracy claim necessarily fails. *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 126 (2d Cir. 2018).

## III. PLAINTIFF'S SWISS-LAW CLAIMS FAIL

Plaintiff's novel application of the Swiss Code of Obligations (the "SCO") fares no better. Those claims should be dismissed as to the KPMG US Defendants for the reasons discussed in the

---

[6] The AC otherwise relies on a handful of unrelated private civil settlements, four administrative agreements with the SEC, and a nearly 20-year-old deferred prosecution agreement related to tax issues. *See* ¶ 424. But voluntarily resolving civil litigation or regulatory matters—or even historical criminal matters—is not indicative of any criminality, much less an ongoing pattern. *See Lipsky*, 551 F.2d at 893–94 (finding allegation of civil and criminal settlements did not support RICO claim); *Int'l Bhd. of Teamsters Loc. 456 Health & Welfare Tr. Fund v. Quest Diagnostics Inc.*, 2012 WL 13202126, at *5 (E.D.N.Y. Apr. 19, 2012) ("The law is clear that because [defendant's] liability was never adjudicated, the fact that it entered into a settlement agreement with the government is immaterial and inadmissible.").

CS Brief, and also because KPMG US was not CS AG's statutory auditor and there is no application of Swiss law that would allow it to be held liable under the SCO for Plaintiff's claims. *See* Decl. of Professor Harald Bärtschi ¶ 20 ("Bärtschi Decl."). Even if Swiss law could reach the KPMG US Defendants, Plaintiff's auditor-liability claim under Article 755 also fails on the merits because that provision makes actionable only specified breaches of duties owed to Swiss companies by their statutory auditors. Bärtschi Decl. ¶ 21.[7] Article 755 also requires allegations of (i) a breach of duty, (ii) damage, (iii) causation and (iv) fault. Bärtschi Decl. ¶ 25. The AC fails on every prong.

*First*, Swiss law recognizes causes of action only for breaches of particular duties. Bärtschi Decl. ¶ 26. Plaintiff here recites a laundry list of supposed "breaches" in the AC, *see* AC ¶ 347, but none is recognized under the SCO. Bärtschi Decl. ¶ 28 (identifying only three potentially viable claims against KPMG US, none of which are alleged here); *see also id.* ¶ 29–31.

*Second*, plaintiffs typically plead limited categories of damages under Article 755. Specifically, a claim for damages is typically found where the plaintiff alleges that the audit report—which is formally issued and signed by the statutory auditor—did not reveal certain deficiencies of the annual financial statements of the company and that insolvency proceedings were thereby delayed, causing damages to the creditors of the company. Bärtschi Decl. ¶ 32. Plaintiff's damages here are connected entirely to the decline in CS AG's stock price. AC ¶ 4.

*Third*, Plaintiff fails to allege that the KPMG US Defendants caused his supposed damages. As in the US, a plaintiff's claim fails if, for example, the chain of causation is too attenuated to constitute proximate cause, rests on mere conjecture, or depends on the intervention of multiple

---

[7] To the extent Plaintiff asserts a claim against the KPMG US Defendants under Article 41 of the SCO, that Article is superseded by Article 755. Bärtschi Decl. ¶ 27.

12

parties. Bärtschi Decl. ¶ 35. Those principles foreclose Plaintiff's Swiss-law claims here: no well-pled facts connect KPMG US to KPMG Switzerland's audits of CS AG, nor do they connect the role of KPMG Switzerland, as statutory auditor for CS AG until the end of 2020 responsible for evaluating CS AG's financial statements, to CS AG's eventual collapse in 2023. Where (1) the KPMG US Defendants had no role with regard to CS AG, (2) KPMG Switzerland's role was limited and ended in 2020, and (3) CS AG was governed by its own officers and directors, allegations that "KPMG" was responsible for "protect[ing] Credit Suisse and its shareholders from the occurrence of [legal and regulatory] risks and the damage which would result" therefrom, AC ¶ 219, are far too tenuous. Bärtschi Decl. ¶ 36 (no adequate "causal connection" exists under Swiss law where alleged injuries were too far removed from defendant's actions).

## IV. THE AC ALLEGES NO FACTS ABOUT THE KPMG US INDIVIDUALS

Plaintiff's claims against Paul Knopp and Laura M. Newinski fail for the additional reason that the AC lacks a single allegation specific to either individual. "Where the complaint names a defendant in the caption but contains no allegations indicating exactly how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *Hobbs v. Dept. of Transp. NYC*, 2020 WL 1140794, at *3 (S.D.N.Y. Mar. 6, 2020) (alteration in original) (McMahon, J.) (citation omitted); *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 440 (S.D.N.Y. 2012) (same).

## CONCLUSION

For the foregoing reasons and those stated in the CS Brief, the KPMG US Defendants respectfully request that the Court dismiss the claims against them with prejudice.

13

Dated: September 22, 2023
      New York, New York

Respectfully submitted,

LATHAM & WATKINS LLP

/s/ Jamie L. Wine
Jamie L. Wine
Jason C. Hegt
Corey A. Calabrese
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
jamie.wine@lw.com
jason.hegt@lw.com
corey.calabrese@lw.com

Stephen P. Barry (admitted *pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2330
stephen.barry@lw.com

*Attorneys for KPMG LLP, Paul Knopp, and Laura M. Newinski*